# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**SCHNEIDER LOGISTICS, INC.,**

      Plaintiff,

    v.                                                     Case No. 25-C-252

**C.H. ROBINSON COMPANY, INC.,**

      Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

      Plaintiff Schneider Logistics, Inc. (SLI) brought this action against Defendant C.H. Robinson Company, Inc. (CHR) to recover damages arising from the theft of cargo owned by SLI's customer, Chevron Lubricants (Chevron). SLI brings claims for breach of contract and parallel claims for declaratory judgment. The court has jurisdiction pursuant to 28 U.S.C. § 1332. The case is presently before the court on CHR's motion to dismiss the amended complaint. For the following reasons, the motion will be granted.

## ALLEGATIONS OF THE AMENDED COMPLAINT

      SLI is a logistics provider that arranges for the transportation of goods. Am. Compl. ¶ 13, Dkt. No. 14. SLI's normal duties include "transportation management, carrier management and payment auditing, claims processing, shipment track and trace, and standardized carrier performance reporting." *Id.* Chevron, one of SLI's customers, manufacturers lubricants. *Id.* ¶ 14. SLI manages a wide array of shipments for Chevron. *Id.* ¶ 15. SLI, serving as an agent of Chevron, engaged CHR to broker loads of Chevron products. *Id.* ¶¶ 16–18. In furtherance of the same, SLI and CHR entered into a Master Brokerage Agreement (MBA) which contained the rates and terms

applicable to the transportation of Chevron's cargo. *Id.* ¶ 18. SLI and CHR subsequently entered into a Transportation Schedule as a separate agreement. *Id.* ¶ 22. Both the MBA and Transportation Schedule contain provisions relating to liability for cargo loss/damage and indemnification, as well as payment of reasonable attorneys' fees in the event of a dispute. *Id.* ¶¶ 20, 23–24; *see also, e.g.*, Dkt. No. 14-1 at 14 ("Broker agrees to indemnify, defend, and hold harmless SLI and Customer from and against any and all claims, causes of action, losses, costs and expenses (including attorneys' fees) . . . .").

On April 29, 2024, SLI offered a load to CHR for shipment from Chevron's Port Arthur, Texas facility. Am. Compl. ¶ 27. CHR first tendered the load to a carrier named Eagle Transportation, but Eagle Transportation's access to CHR's load board was hacked, so it advised CHR to find a new carrier for the load. *Id.* ¶¶ 29–30. CHR immediately notified SLI of the issue and requested that SLI not place the load with anyone from Eagle Transportation. *Id.* ¶ 31. Early the next day, CHR notified SLI that another carrier, Averitt Express, would pick up the load between 1:00 p.m. and 2:00 p.m. *Id.* ¶ 32. SLI notified Chevron of the pick-up window. *Id.* ¶ 35. Shortly before the pick-up window, a different carrier, Infiniti, arrived with a Bill of Lading correctly identifying the load in question. *Id.* ¶ 36. Meanwhile, Averitt Express, the carrier that was supposed to receive the load was delayed and did not arrive at Chevron's facility until after the pick-up window. *Id.* ¶ 40. Chevron ended up placing the load with Infiniti. *Id.* ¶ 39.

It turned out that the Bill of Lading Infiniti presented Chevron was fraudulent. Infiniti was booked by some unknown person who had hacked CHR's load board and was posing as another broker. *Id.* ¶¶ 37–38. After Infiniti had picked up the load, the fraudulent broker changed the delivery location. *Id.* ¶ 41. Infiniti delivered the load to the new location. *Id.* Realizing the fraud, Chevron attempted to recover the load, but it was unsuccessful. *Id.* At some point thereafter,

2

Chevron demanded compensation for the missing load from SLI. *Id.* ¶ 44. SLI then presented a claim for the missing load to CHR. *Id.* ¶ 42. But CHR denied the claim. *Id.* ¶ 43. This lawsuit followed.

## LEGAL STANDARD

CHR formally moves for dismissal under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss brought under Rule 12(b)(6) tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991).

As grounds for dismissal, however, CHR asserts that SLI does not have standing and that, regardless of standing, SLI's claims are not ripe. Standing doctrine and ripeness doctrine both spring from the case-or-controversy limitation set forth in Article III of the United States Constitution. *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007) ("A case or controversy requires a claim that is ripe and a plaintiff who has standing."). Standing and ripeness challenges, therefore, call into question a court's subject-matter jurisdiction, not the sufficiency of a complaint. A defense of lack of subject matter jurisdiction is ordinarily raised by a motion to dismiss under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *see also Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). But where the challenge is to the face of the complaint, as opposed to a factual challenge to whether standing actually exists, the court accepts as true the well-pleaded allegations of the complaint as Rule 12(b)(6) requires. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

## ANALYSIS

### A. Breach of Contract Claims

CHR contends that the court should dismiss the amended complaint because it fails to allege facts showing SLI has standing to sue; more specifically, it fails to allege an injury in fact. In the alternative, CHR argues that SLI's claims are not ripe for adjudication. And finally, CHR argues that SLI's claims for declaratory judgment are duplicative of its breach of contract claims and should therefore be dismissed. Because the court agrees that SLI has not alleged an injury-in-fact needed to support its breach of contract claims, those claims must be dismissed.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing. U.S. Const. art. III, § 2, cl. 1. The doctrine of standing is not an esoteric doctrine that courts use to avoid difficult decisions; it "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (alterations omitted) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))). It is because of "this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere" that the court "must put aside the natural urge to proceed directly to the merits of an important dispute and to settle it for the sake of convenience and efficiency." *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) (alterations and internal quotation marks omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). So, "[t]he court is bound to ask and answer for itself" the standing question, "even when not otherwise suggested, and without respect to the relation of the parties to it." *Steel*

4

*Co.*, 523 U.S. at 94 (quoting *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)).

"The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.'" *Gracia v. SigmaTron Int'l Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Steel Co.*, 523 U.S. at 103–04). "The party invoking federal jurisdiction bears the burden of establishing these elements" and must prove them "in the same way as any other matter on which [the party] bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Injury in fact is at issue here. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "While the concreteness requirement examines the substance of a plaintiff's asserted injury, the imminence requirement measures its likelihood. In other words, to provide a basis to sue in federal court, an injury must exist 'in both a qualitative and [a] temporal sense.'" *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023) (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

CHR asserts that SLI has not alleged a legally cognizable injury in fact. More specifically, CHR notes that although SLI alleges Chevron has demanded payment for the value of the lost load, SLI does not allege that it has made any payment to Chevron, nor does SLI allege that it has a contractual obligation to indemnify Chevron for the lost load. It follows, according to CHR, that, in standing parlance, SLI has not suffered a concrete injury. SLI counters, arguing that, while it may not have paid any money to Chevron, it has standing because it has suffered "the requisite legal injury" as a result of CHR's alleged breach of the MBA and Transportation Schedule. Br. in

5

Opp'n at 8, Dkt. No. 20 (cleaned up).  But this argument was rejected by the Seventh Circuit in *Dinerstein v. Google, LLC*, 73 F.4th 502 (7th Cir. 2023).

In *Dinerstein*, a university hospital patient brought a putative class action alleging multiple claims against the University and Google after his anonymized electronic health records were disclosed for research purposes.  *Id.* at 509.  One of those claims was for breach of contract: Dinerstein alleged that the University breached its contractual duty to safeguard his medical records, and that the University's breach itself caused him injury.  *Id.* at 516.  In rejecting *Dinerstein*'s argument that this was sufficient to state a claim for breach of contract, the Seventh Circuit explored the Supreme Court's holdings in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), and *TransUnion LLC v. Ramerez*, 594 U.S. 413 (2021).  The court first noted that *TransUnion* plainly held that "an injury in law is not an injury in fact."  73 F.4th at 518–19 (quoting *TransUnion*, 594 U.S. at 427).  The court acknowledged this statement alone might have been enough to extinguish Dinerstein's argument but went further, elaborating on the contours of the concreteness requirement after *Spokeo* and *TransUnion*.

To summarize, the Seventh Circuit began by reiterating that "an injury in fact requires a plaintiff to show that he has suffered a concrete injury—one that is both real and *de facto* and that actually exists."  *Id.* at 519 (citation modified).  The court then observed that in *TransUnion*, the Supreme Court refined the concreteness requirement by differentiating between the cause of action that gives a plaintiff the right to sue and the injury the plaintiff must have suffered.  *Id.*  "[A] plaintiff must have both," the Seventh Circuit opined.  *Id.*  As for Dinerstein's breach of contact claim, the Seventh Circuit held that he "cannot simply allege a bare breach of contract, 'divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'"  *Id.* (quoting *Spokeo*, 578 U.S. at 341).

6

The court then took up its prior decision in *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646 (7th Cir. 2014)—upon which SLI principally relies here. As the court in *Dinerstein* explained, *J.P Morgan* considered "whether a bank had standing to block an ongoing arbitration proceeding that two investors had initiated" when those investors' accounts were governed by contracts that "included a forum-selection clause that required disputes to be brought in either state or federal court." 73 F.4th at 521. The court in *J.P Morgan* held that the bank had standing to sue because "[w]hen one party fails to honor its commitments, the other party to the contract suffers a legal injury sufficient to create standing even where that party seems not to have incurred monetary loss or other concrete harm." 760 F.3d at 650–51. But as the court noted in *Dinerstein*, "the bank had 'a very real financial interest in the arbitration' because it was statutorily and contractually obligated to 'foot the bill' for the resulting costs." 73 F.4th at 522 (quoting *J.P Morgan*, 760 F.3d at 651). Thus, "[t]he concrete harms present in *J.P. Morgan*—being hauled into an improper forum and financing the resulting costs—distinguish it from" a case where nothing more than a breach of contract is alleged. *Id.* The court in *Dinerstein* concluded by acknowledging that some of the broad pronouncements in *J.P. Morgan* are "in tension with" the Supreme Court's decisions in *Spokeo* and *TransUnion*, for after those rulings, "[n]o longer is a legal injury sufficient to create standing." *Id.* (cleaned up); *see also Thole v. U. S. Bank N.A.*, 590 U.S. 538, 542–43 (2020).

Here, even accepting as true SLI's allegations that CHR breached the indemnification provisions of the MBA and Transportation Schedule, such a breach is not enough, without more, to establish standing on a breach of contract claim in the wake of *Spokeo*, *TransUnion*, and *Dinerstein*. SLI does not allege the required "something more." SLI has failed to allege it has made any payments to Chevron to compensate it for the missing load or that it has a contractual duty to indemnify Chevron for the missing load. Nor does SLI allege that it has been called upon

7

to defend itself in a lawsuit commenced by Chevron; it alleges only that Chevron "has demanded compensation from SLI for the missing load." Am. Compl. ¶ 44. "Without an allegation that the purported breach resulted in some concrete harm," this court lacks "the 'freewheeling power' to hold [CHR] accountable for its alleged 'legal infraction[].'" *Dinerstein*, 73 F.4th at 519 (second alteration in original) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)).

This is essentially the same result that the Sixth Circuit reached in *Exel, Inc. v. Southern Refrigerated Transport, Inc.*, 807 F.3d 140 (6th Cir. 2015). In that case, a freight broker brought a breach of contract action against an interstate motor carrier seeking damages for a shipment of its customer's pharmaceuticals that had been stolen during transport. As in this case, the broker claimed the carrier was liable to it for the loss to the broker's customer under a master transportation services agreement, even though the broker offered no evidence that it had paid for or was itself liable for the loss. *Id.* at 147. The Sixth Circuit reversed the district court's grant of summary judgment in favor of the broker, holding that the broker lacked standing to assert a breach of contract claim against the carrier because it had suffered no injury. *Id.* The same reasoning applies here. Because SLI has failed to allege an injury in fact, its breach of contract claims will be dismissed.

**B. Claims for Declaratory Relief**

SLI's amended complaint also includes claims for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, which, as CHR contends, are duplicative of its breach of contract claims and, thus, fail for the same reason—lack of standing. SLI lacks standing to obtain declaratory relief not only because it has failed to allege any injury but also because it has failed to allege a realistic threat of litigation.

8

"Declaratory judgment actions serve an important role in our legal system insofar as they permit prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002) (citing Edwin Borchard, DECLARATORY JUDGMENTS 107 (1934)). But an action for declaratory relief, like any other action, must satisfy Article III, which allows federal courts to act only in the event of actual "cases and controversies." *Id.* at 712 (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "Where a declaratory plaintiff files a complaint in anticipation of litigation by the declaratory defendant, a case or controversy exists if the threat of such litigation is real and immediate." *Norfolk S. Ry. Co. v. Guthrie*, 233 F.3d 532, 534 (7th Cir. 2000). A vague demand for compensation is not enough to create a case or controversy. *See Hyatt*, 302 F.3d at 712 ("Of course the threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment."). "The declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative." *Id.*

Here, SLI has failed to allege facts sufficient to show that Chevron's "demand for compensation" has any basis in law or fact. SLI alleges that Chevron was its customer and that it manages the transportation of all inbound and outbound deliveries of bulk and finished Chevron product to Chevron's customers, warehouses, plants and manufacturers. Am. Compl. ¶¶ 1,15. SLI alleges that CHR's negligence led to Chevron's load being stolen and that CHR is contractually bound to indemnify SLI regardless of whether it was negligent or not. But nowhere in the amendment complaint does SLI explain why it is liable to Chevron such that it needs CHR's defense or indemnification. Absent such information, the court cannot conclude that Chevron's

demand for payment "is immediate and real, rather than merely speculative." *Hyatt*, 302 F.3d at 712.

In sum, SLI has not alleged that it has suffered an injury in fact and, therefore, does not have standing. Accordingly, CHR's motion to dismiss the amended complaint (Dkt. No. 17) is **GRANTED**. CHR's motion to dismiss the original complaint (Dkt. No. 10) is **DENIED as moot**. This action is dismissed for lack of subject-matter jurisdiction. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 9th day of October, 2025.

_____
William C. Griesbach
United States District Judge